UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7|30|19

---

CAROL BARRER-COHEN,

               Plaintiff,

   -against-

GREENBURGH CENTRAL SCHOOL DISTRICT,
TAHIRA DUPREE CHASE, Individually,
PATRICIA SIMONE, Individually, DAVID
WARNER, Individually, CLAUDIA GLASER,
Individually, TRACY MAIRS, Individually,
ANTIONETTE DARDEN-CINTRON, Individually,
LLOYD NEWLAND, Individually, and TERRY
WILLIAMS, Individually,

               Defendant.

No. 18 Civ. 1847 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

     Plaintiff Carol Barrer-Cohen ("Plaintiff"), commenced this action under: Title VII of the

Civil Rights Act of 1964, as amended 42 U.S.C. §2000e; the Fourteenth Amendment to the United

States Constitution, 42 U.S.C. §1983; the Age Discrimination in Employment Act of 1967

("ADEA"), as amended, 29 U.S.C. §621; the Older Workers Benefit Protection Act ("OWBPA"),

29 U.S.C.A. §626; and breach of contract. (First Amended Complaint ("FAC") ¶ 17-19.) Plaintiff

alleged that she suffered from: discrimination and retaliation based on her race and age; violations

of her due process and equal protection rights; and violations of New York contract law. She brings

claims against: Greenburgh Central School District ("District"), Tahira Dupree Chase

("Superintendent Chase"), Patricia Simone ("Principal Simone"), David Warner, Claudia Glaser,

Eric Bitterman, Tracy Mairs, Antionette Darden-Cintron, Lloyd Newland, and Terry Williams

(collectively, "Defendants"). (FAC ¶ 1.)

1

Presently before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 30.) For the following reasons, the Motion to Dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are derived from the Complaint and are assumed to be true for the purpose of this motion. Plaintiff, a Caucasian female over the age of 50, was a tenured teaching assistant for the District, a political subdivision of the State of New York, County of Westchester. (FAC ¶ 2.) During Plaintiff's 24 years of employment, she had never been the subject of any formal or informal disciplinary action until this action. (*Id.* ¶ 3.)

As a teaching assistant, Plaintiff was only responsible for the students specifically assigned to her by the reading teacher and was not assigned to any particular classroom or teacher. (*Id.* ¶ 4.) When Plaintiff would assist the students assigned to her, she would pull them out into the hallway outside of the student's assigned classroom. (*Id.* ¶ 5.) Laurie Olivia ("Ms. Olivia"), a black female teacher under the age of 50, did not assign students to Plaintiff, and at no time during the 2016-2017 academic school year was Plaintiff assigned to assist any of Ms. Olivia's students. (*Id.* ¶ 5.)

In March 2017, while Plaintiff was working for the District, a student's parent contacted the District to complain of sexual contact among four students in Ms. Olivia's classroom. (*Id.* ¶ 6.) The incident occurred while Plaintiff was not inside or scheduled to be inside Ms. Olivia's classroom. (*Id.* ¶ 8.) On March 29, 2017, Plaintiff was removed from her duties as teaching assistant by Principal Simone and Superintendent Chase, and reassigned to sit at an empty desk in the public hallway of the District's administrative building in full view everyone that enters the building. (*Id.* ¶ 2, 7.)

This area is known as the "Fishbowl." (*Id.* ¶ 7.) Plaintiff alleges that being placed in the "Fishbowl" lead to humiliation and embarrassment and that she sat there from March 29, 2017 through May 15, 2017. (*Id.*) While Plaintiff was reassigned, she was never made aware of the allegations regarding the children in Ms. Olivia's classroom. (*Id.*) Ms. Olivia, however, was reassigned the same day as Plaintiff and was allowed to serve that reassignment from home. (*Id.*)

On May 30, 2017, Superintendent Chase met with Plaintiff and threatened her with administrative and criminal charges for the incident alleged to have occurred in Ms. Olivia's classroom, unless Plaintiff resigned. (*Id.* ¶ 8.) But Superintendent Chase did not threaten Ms. Olivia with those same charges. (*Id.*) In this meeting, Superintendent Chase also offered Plaintiff a "Retirement Incentive Package" ("Retirement Package") if Plaintiff resigned. This Retirement Package provided a $15,000 stipend, 10 years-worth of paid benefits, including medical benefits, and reimbursement of Plaintiff's unused sick time. (*Id.* ¶ 9.)

On June 2, 2017, Plaintiff handed Superintendent Chase her resignation letter, which outlined the package terms. (*Id.* ¶ 9-10.) After Superintendent Chase accepted Plaintiff's resignation letter, she handed Plaintiff a "Settlement Agreement," which they had never discussed. (*Id.*) Superintendent Chase threatened to rescind Plaintiff's Retirement Package if Plaintiff did not sign the settlement agreement. (*Id.* ¶ 10.) But Superintendent Chase did not require Ms. Olivia to sign a settlement agreement prior to her retirement. (*Id.* ¶ 11.)

Plaintiff informed Superintendent Chase that she would use the forty-five days provided under the Older Workers Benefit Program ("OWBPA") and the Age Discrimination in Employment Act ("ADEA") to consider the settlement agreement. (*Id.*) But, prior to the forty-five days passing, Superintendent Chase forwarded Plaintiff's resignation letter to Defendant Board members. (*Id.*) On June 20, 2017, Board members voted to approve Plaintiff's resignation. (*Id.* ¶

11.) When Plaintiff was made aware of the Board member's approval of her resignation, she believed that it included the retirement package agreement. (*Id.* ¶ 12.) Plaintiff also believed that she was no longer required to sign the settlement agreement. (*Id.*) But since the Board denied her retirement package, Plaintiff has paid for her medical, dental, and vision benefits through June 2017. (*Id.* ¶ 13-14.)

In addition, after the Board approved Plaintiff's resignation, Plaintiff alleges that the District issued a "Counseling Letter" and placed it into Plaintiff's personnel folder without her notice and backdated it to March 28, 2017. (*Id.* ¶ 14.) Plaintiff had no notice of the Counseling Letter until after the Board approved her resignation. (*Id.* ¶ 15.) The Counseling Letter accuses Plaintiff of failing to supervise severe sexual misconduct, alleges such conduct occurred "in [Plaintiff's] classroom," and claims that Plaintiff was "removing [children] from [her] classroom." (*Id.* ¶ 14-15.)

## LEGAL STANDARD UNDER 12(B)(6)

In assessing a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), this Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

**DISCUSSION**

## I.    Title VII Race Discrimination Claim

Plaintiff has established a Title VII race discrimination claim. To establish a *prima facie* case of race discrimination under the Title VII a plaintiff must show that, (1) she was within the protected group, (2) she was qualified for the position, (3) she experienced adverse employment action, and (4) such action occurred under circumstances giving rise to an inference of discrimination. *Johnson v. Andy Frain Servs., Inc.*, 683 F. Appx, 68, 70 (2d Cir. 2016).

Here, Plaintiff, a Caucasian, is undisputedly a member of a qualified class and qualified for her position as a teaching assistant, which she had for 24 years. Hence, the only two elements at issue are the third—whether there was an adverse action, and the fourth--whether she has pleaded enough to give rise to an inference of discrimination. The Court next addresses why it finds that Plaintiff has plausibly pleaded each of those in turn.

### A.    Adverse Action Under Title VII

Plaintiff's paid leave coupled with Defendant's collective conduct constitutes an adverse employment action under Title VII. A plaintiff establishes an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. Of Educ.,* 202 F.3d 636, 640 (2d Cir.2000). A materially adverse change might be indicated by "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguishable title, a material loss of benefits, or other indices…unique to a particular situation. *Id.* "Because there are no bright line rules as to which employment actions [constitute]

adverse [actions], courts must make this determination on a case-by-case basis." *Pimentel v. City of New York,* No. 00 Civ. 326, 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002). "An employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Joseph v. Leavitt*, 465 F3d 87, 91 (2d Cir. 2006). But under some circumstances, suspension with pay may rise to the level of an adverse employment action. *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). "The relevant question is therefore whether the employer has simply applied reasonable disciplinary procedures to an employee or if the employer has exceeded those procedures and thereby changed the terms and conditions of employment. Paid suspension during an investigation could thus potentially be adverse if the employer takes actions beyond the employee's normal exposure to disciplinary policies." *Joseph*, 465 F.3d at 91. "The key question is whether the administrative leave 'changed the terms and conditions of employment' or was coupled with other actions—something more—that, together with administrative leave, did so." *Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F.Supp.3d 296, 314 (S.D.N.Y. 2016) (quoting *Joseph*, 465 F.3d at 92).

Courts have held that there is an adverse employment action when the plaintiff is placed on administrative leave for a lengthy time and the terms of reassignment are unusual, or when the defendant negatively affects the plaintiff's career at the company, publicly criticizes her work and credibility, or does not conclude an internal investigation after promising to do so. *Id.* at 315; *Richardson v. Petasis*, 160 F.Supp.3d 88, 106, 118 (D.D.C. 2016).

Here, Plaintiff plausibly alleges an adverse employment action because the context of Plaintiff's resignation, her administrative reassignment, the Counseling Letter, and Defendant's threats to file criminal charges, taken together amount to the "more" required for a paid leave

situation to constitute an adverse employment action. Plaintiff, by being placed in the "Fishbowl "and receiving a backdated Counseling Letter with false accusations, is similarly situated to the plaintiff in *Richardson*, whom the Court found suffered an "unusual reassignment" when she was placed on an administrative leave that required her to perform certain tasks in order to return to work, even though those tasks were prohibited by school rules. 160 F.Supp.3d at 106. Plaintiff is also similar to the plaintiff in *Johnson*, whose employer negatively affected her future at the company by placing her on paid leave while abandoning her internal investigation, hindering development of her department, publicly criticizing her work ethic, and commenting that she was not credible or truthful.

Plaintiff also adequately alleges that Defendant's actions went beyond normal disciplinary action by comparing how she was treated differently than Ms. Olivia. Plaintiff was reassigned to the Fishbowl and was in the view of everyone in the administrative building, while Ms. Olivia served reassignment from home. Plaintiff was also threatened with criminal and administrative charges while Ms. Olivia was not. Finally, Plaintiff was required to sign a settlement agreement in order to receive a retirement package, while Ms. Olivia's retirement package was not threatened.

In sum, these actions taken by Defendant go beyond Plaintiff's normal exposure to discipline. Thus, Defendants conduct taken together amount to an adverse employment action.[1]

---

[1] Plaintiff did not plausibly allege her resignation was in fact a termination, therefore, cannot argue it amounted to an adverse employment action. Courts have found termination constitutes an adverse employment action. *Galabya*, 202 F3d at 640. Here, Plaintiff alleges she was terminated, but the Amended Complaint states otherwise. Throughout the Amended Complaint, Plaintiff states she tendered her letter of retirement to Superintendent Chase in return for the retirement package promised to her. Though there are questionable circumstances regarding whether she was falsely induced to tender her resignation letter by Superintendent Chase, it still does not follow that it Plaintiff's resignation was a termination. It was Plaintiff's resignation letter that the Defendant Board members used to vote to approve the resignation. Therefore, Plaintiff's resignation alone does not support an adverse employment action.

**B.    Inference of Discrimination**

Plaintiff also plausibly alleged an inference of discrimination. A plaintiff can establish an inference of discrimination from circumstances including, but not limited to, "the more favorable treatment of employees not in the protected group." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). This is known as a disparate treatment claim. *Id.* But, if a plaintiff relies on disparate treatment evidence, they must show how they were similarly situated *in all material respects* to the individuals with whom they seek to compare themselves. *Mandell v. Cty. Of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Courts decide if an individual is similarly situated in all material respects by considering "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). "To compare conduct under this standard, a plaintiff's and comparator's facts and circumstances need only bear a 'reasonably close resemblance' and need not to be identical." *Id.* Because of varying circumstances in each case, "courts must make an 'independent determination' about whether the specific facts pleaded provided evidence of disparate treatment." *Id.*

Courts have found an individual is not similarly situated to a coworker when they work in different agencies, were terminated by different individuals, or their conduct was not of comparable seriousness. *Littlejohn,* 795 F.3d at 312; *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001). In *Littlejohn*, the Second Circuit found the plaintiff was unable to prove an inference of discrimination by relying on adverse employment actions taken against other employees who worked at different agencies and who had different jobs because they were not similarly situated. 795 F.3d at 312. In contrast, in *McGuinness*, the Court found the plaintiff was similarly situated to his coworker who received considerably more money than him in severance

because they had roughly equivalent rank, were fired at the same time, and the decisions regarding their severance packages were made by the highest levels of the company. 263 F.3d at 54. Additionally, a plaintiff is not similarly situated to a coworker when the conduct of both the plaintiff and coworker does not equal in seriousness. *Blair v. New York City Transit Authority*, 14 CV 5091 ENV, 2016 WL 6405900, at *4 (E.D.N.Y. Oct. 27, 2016) (finding that, plaintiff's conduct of forming a relationship with a 14 year-old girl was not of comparable seriousness to his coworkers relationship to a 16 year-old girl).

Here, Plaintiff alleged an inference of discrimination because: (1) Defendants' conduct towards Plaintiff was more severe than towards Ms. Olivia; (2) Plaintiff and Ms. Olivia held roughly similar jobs and decisions regarding their reassignment and resignation were made by the same individuals; and (3) the behavior of both equaled in seriousness.

Defendants' conduct towards Plaintiff was disparate and more severe than towards Ms. Olivia, a younger African American. First, Plaintiff was reassigned to sit at an empty desk in the District's administrative building, while Ms. Olivia served reassignment to her home. Additionally, Plaintiff was threatened with administrative and criminal charges if she did not resign, while Ms. Olivia was not. Lastly, Plaintiff was required by Superintendent Chase to sign a settlement release prior to her resignation but Ms. Olivia was not.

Ms. Olivia and Plaintiff were also similarly situated in workplace standards. Unlike in *Littlejohn*, where the plaintiff and coworker were from different agencies and held different jobs, here, Plaintiff, a teaching assistant, and Ms. Olivia, a teacher, held similar jobs for the same elementary school. Further, Plaintiff and Ms. Olivia were roughly equivalent in rank, were both reassigned on the same day, and decisions regarding their reassignment and retirement were both made by Superintendent Chase. Moreover, Plaintiff engaged in comparable conduct to Ms. Olivia.

Unlike in *Blair*, where the conduct of the plaintiff was more severe than his coworker, here, if anything, Plaintiff alleges Ms. Olivia's conduct was more severe. Plaintiff was only responsible for students specifically assigned to her and none were from Ms. Olivia's room, where the alleged sexual conduct occurred.

Thus, the Court finds that Plaintiff plausibly alleged an inference of discrimination, and Defendants Motion to Dismiss this claim is DENIED.

## II.    ADEA Discrimination

Plaintiff's ADEA discrimination claim is dismissed. A *prima facie* case for discrimination under the ADEA consists of the same requirements as a Title VII discrimination claim. *Brown*, 673 F.3d at 150. But, pleading age discrimination is more difficult under the ADEA than under Title VII. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 228, 125 S. Ct. 1536, 1538 (2005) (finding there are "[t]wo textual differences between the ADEA and Title VII [that] make [it] clear that the disparate-impact theory's scope is narrower under the ADEA than under Title VII.").

Here, Plaintiff's allegations are insufficient to plausibly pleaded an inference of age discrimination because she attempts to rely only on how she was treated in comparison to a single younger teacher, Ms. Olivia. *See Shapiro v. New York City of Dept. of Education*, 561 F.Supp.2d 413, 424-25 (S.D.N.Y. 2008) (finding plaintiffs established an inference of discrimination by claiming that the defendant: allowed younger teachers to take their students on field trips but denied older teachers, made statements that he preferred to hire younger candidates, expressed "extreme dismay" that plaintiff was not planning on retiring, and "all the teachers that transferred from GCA during the 2004-2005 school year were over the age of forty."); s*ee also Trachtenberg v. Department of Educ. of City of New York*, 937 F.Supp.2d 460, 470 (S.D.N.Y. 2013) (finding plaintiff plausibly pleaded an inference of discrimination by alleging: "she was compared

unfavorably to a younger speech teacher," "five specific teachers in their 50's and 60's were targeted for discipline and negative evaluations," "four specific teachers in their 20's and 30's did not face the same degree of scrutiny as their older colleagues," and "[plaintiff] was denied training opportunities afforded to younger teachers."). Further, under the ADEA, a government employee's damages are limited to "make-whole remedies such as back pay, front pay, and reinstatement," none of which Plaintiff seeks. *Hatter v. New York City Hous. Auth.*, No. 97-9351, 1998 WL 743733, at *1-2 (2d Cir. 1998). Therefore, Plaintiff's ADEA discrimination claim is dismissed.

## III.     Retaliation Claims

### A.     Older Workers Benefits Protection Act

Plaintiff fails to plead a plausible OWBPA retaliation claim. In 1990, the ADEA was amended to enact the OWBPA, which was intended to "govern the effect of waivers and releases of ADEA claims," and provides that an individual may not waive any right or claim under the ADEA unless the waiver is knowing and voluntary. *E.E.O.C. v. UBS Brinson, Inc.*, Nos. 02 Civ. 3748 RMBTK, 2003 WL 133235, at *3 (S.D.N.Y. Jan. 15, 2003). The OWBPA "determines whether the employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim. The OWBPA does not, by itself, determine in the first instance whether age discrimination has occurred." *Id.* (quoting *Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1191–92 (10th Cir. 1999)).

Here, Plaintiff's OWBPA retaliation claim fails because Plaintiff alleges a violation of the OWBPA on the grounds that she was not provided with the forty-five days to consider the proposed agreement. But, the OWBPA does not create a private cause of action, and therefore, the claim is without merit.

### B.     ADEA Retaliation

Plaintiff's ADEA retaliation claim is also insufficiently pleaded. In order to assert a plausible retaliation claim under the ADEA, a plaintiff must allege: (1) that he engaged in protected activity; (2) that defendant was aware of this participation; (3) that the plaintiff suffered an adverse employment action; and (4) that a causal connection exists between the protected activity and the adverse employment action. *Kessler v. Westchester County Department of Social Services*, No. 04 Civ. 5752 CLB, 2005 WL 1023222, at *2 (S.D.N.Y. Apr.20, 2005). A causal connection can be shown either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). If the causal connection is shown indirectly through temporal proximity, the intervening period must be "very close." *Clark County School District v. Breeden*, 532 U.S. 268, 272 (2001). Lastly, courts have held employers cannot retaliate for conduct of which they are unaware. *Rinsler v. Sony Pictures Entm't, Inc.*, No. 02-CIV. 4096 SAS, 2003 WL 22015434, at *9 (S.D.N.Y. Aug. 25, 2003).

Here, Plaintiff engaged in the protected activity by exercising her rights under the OWBPA, which permits her to consider a settlement agreement. Second, Superintendent Chase was aware of this activity because Plaintiff informed Defendant Chase that she was doing so during their June 2, 2017, meeting. Third, as previously discussed, Plaintiff has sufficiently alleged that she suffered an adverse employment action.

Turning to the last element, the Court finds that Plaintiff has not adequately pleaded a causal connection between Plaintiff requesting the forty-five days and Defendant Superintendent

Chase's adverse employment action. Plaintiff bases her retaliation claim on her resignation being the adverse employment action, but that contention fails as a matter of law because resignation alone is insufficient to plead a plausible adverse employment action. *Cadet v. Deutsche Bank Securities, Inc.*, No. 11 CIV.7964 CM, 2013 WL 3090690, at *9 (S.D.N.Y. June 18, 2013). Plaintiff, however, succeeded on alleging an adverse employment action through Defendant's overall conduct towards Plaintiff. Problematically, Plaintiff requested the forty-five days after most of the adverse conduct—Defendant placing Plaintiff on administrative reassignment, threatening her with criminal charges, and requiring her to sign a settlement release agreement—took place. Thus, Plaintiff's ADEA retaliation claim fails because the temporal relationship between the protected activity and the adverse action is backwards, warranting dismissal.

## IV.  § 1983 Claims

### A.  § 1983 Due Process

Plaintiff's §1983 due process claim is dismissed as a matter of law due to Plaintiff's failure to oppose the motion. Courts have held that a plaintiff is deemed to have abandoned her claim when she does not oppose dismissal of that claim in opposing defendant's motion. *See Hanig v. Yorktown Cent. School Dist.*, 384 F.Supp.2d 710, 723 (S.D.N.Y. 2005). Here, Plaintiff abandoned her §1983 claim because she failed to address the argument. Therefore, Plaintiff's §1983 due process claim is abandoned.

### B.  § 1983 "Stigma Plus"

#### i.  Counseling Letter Satisfied

In an action based on a termination from government employment, a plaintiff must satisfy three elements to demonstrate a deprivation of the stigma component of a stigma-plus claim: (1) the government made stigmatizing statements that call into question the plaintiff's good name, reputation, honor, or integrity; (2) "the plaintiff must prove the stigmatizing statements were made

public"; and (3) "the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006). A stigma-plus claim "involves an injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process." *Id.* It is well settled that public employees who can be discharged only for cause, have a constitutionally protected property interest in their tenure. *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 789 (2d Cir. 1999). Further, when statements are placed in a plaintiff's personnel file, the public disclosure element may be satisfied. *Segal,* 459 F.3d at 213.

Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" will satisfy the stigma requirement. *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 630–31 (2d Cir. 1996). "When the stigma theory is based on denigration of the employee's professional competence [liberty interest], the plaintiff must also show foreclosure of future business opportunities. *Sprang v. Katonah-Lewisboro Union Free Sch. Dist.*, 626 F.Supp.2d 389, 395 (S.D.N.Y. 2009). Courts have found a defendant makes stigmatizing statements when they damage the plaintiff's reputation in the profession or persuade future employers to not hire plaintiff. *Donato*, 96 F.3d at 672; *Segal*, 459 F.3d at 213 (holding that letters accusing the plaintiff of having inflicted corporal punishment upon a student under her supervision "would be highly stigmatizing and damaging to a school teacher."); *Donato*, 96 F.3d at 672 (finding plaintiff plausibly alleged comments were stigmatizing when defendant stated plaintiff "lacked competence in the area of

14

master scheduling, was ineffective as a disciplinarian, and showed lack of concern in her interactions with parents," and discussed her failure to investigate gang activity in school).

Here, Plaintiff adequately pleaded the "stigma" and the "plus" requirements. The second requirement of public disclosure was met when Defendant placed the Counseling Letter into Plaintiff's personnel file. Additionally, the close temporal relationship requirement is met because the Counseling Letter was placed in Plaintiff's file immediately after the Board members adopted Plaintiff's resignation. Further, since Plaintiff was a tenured government Teaching Assistant, she had a tangible property interest in her position.[2]

The Court turns to the last element—whether the Counseling Letter was "stigmatizing." Here, the Court finds that it was stigmatizing because it damages Plaintiff's professional reputation as a teaching assistant and also dissuades future schools from hiring Plaintiff. Similar to *Segal*, where it was deemed damaging to the plaintiff's reputation as a school teacher to be accused of having inflicted corporal punishment upon a student she was supervising, here, the Counseling Letter, which accuses Plaintiff of failing to supervise students and allowing severe sexual misconduct between students, damages her reputation as a teaching assistant. *See also Donato*, 96 F.3d at 672 (where the comments by the defendant that accused plaintiff of failing to investigate gang activity and being an ineffective disciplinarian, would persuade other school boards not to hire the plaintiff.); c*f. O'Neill v. City of Auburn*, 23 F.3d 685, 692 (2d Cir. 1994) (finding statements that the plaintiff had poor relationships, work was not up to par, and that he was sloppy were not stigmatizing because they did not either go beyond his power to correct or did not involve statements about professional incompetence that restricted future employment).

_____

[2] The Court rejects Defendant's contention that Plaintiff must prove foreclosure of business opportunities. As stated in *Spang*, a plaintiff must prove foreclosure of business opportunities if they are arguing a *liberty* interest is being violated. *Spang*, 626 F.Supp.2d at 395. But, here, Plaintiff claims her *property* interest is being violated.

Here, the Counseling Letter represents that sexual misconduct occurred in Plaintiff's classroom, even though the classroom at issue was not assigned to her. The Letter also accuses Plaintiff of failing to supervise the children, even though Plaintiff was not assigned any students in the room where the activity occurred. And it also reflects that parents requested their children be removed from that classroom. These comments taken together would convince other schools to not hire Plaintiff. Therefore, Plaintiff sufficiently alleged the statements were stigmatizing.

ii.     **Article 78 Proceeding**

Although Plaintiff pleaded a plausible claim, Plaintiff's pleadings are deficient because she had an adequate post-deprivation remedy, an Article 78 proceeding, available. After a plaintiff demonstrates a deprivation of her liberty and/or property, she must also show a deprivation without due process of law because "the availability of adequate process defeats a stigma-plus claim." *Segal*, 459 F.3d at 213. A stigma-plus claim enforces the right to be heard "at a meaningful time and in a meaningful manner." *Goldberg v. Kelly,* 397 U.S. 254, 267 (1970). Generally, a three-part test is used to evaluate whether the available process was constitutionally adequate: "[f]irst, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Court turns to the first *Mathews* element. In *DeMichele*, the Court held there was no question that the plaintiff's interest in his tenured teaching position was substantial. 167 F.3d at 789. This is especially true when there are "questionable circumstances" surrounding the plaintiff's departure that would make finding new employment difficult. *Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 543 (1985). Second, "the government interest at stake in a stigma-plus

claim is its ability to execute and explain its personnel decisions quickly," and that interest is stronger when the employee is at-will versus a tenured employee. *Segal*, 459 F.3d at 215. The third element involves the "risk that false charges against the plaintiff will go unrefuted and that [her] name will remain stigmatized." *Patterson v. City of Utica*, 370 F.3d 332, 336 (2004).

Courts have found a post deprivation hearing necessary when the plaintiff is an at-will employee with a reasonable means to protest the stigmatizing statements or when a plaintiff resigns and can challenge the voluntariness with an Article 78 proceeding. *Giglio v. Dunn*, 732 F.2d 1133, 1134-35 (2d Cir. 1984); *Segal*, 459 F.3d at 214-16. For example, in *Segal*, the Court found the *Mathew's* factors weighed in favor of a post deprivation hearing because although the plaintiff had a great interest in protecting her reputation and professional interests: (1) the plaintiff was only an at-will employee; (2) the government's interest to execute personnel decisions quickly was strong; and (3) the C-31 regulation provided her with the means necessary to clear her name, opportunity to present evidence, and make oral arguments. 459 F.3d at 214-16. Similarly, in *Giglio*, the Court found the plaintiff was given sufficient due process because the tenured high school teacher could have commenced an Article 78 proceeding after his resignation to challenge its voluntariness. 732 F.2d 1134-35. The Court explained "it is hard to visualize what sort of prior hearing the Constitution would require the employer to conduct…when an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance." *Id.*

Here, Plaintiff's stigma-plus claim is defeated by the availability of an adequate remedy, an Article 78 proceeding, after her resignation. Thus, the first *Mathew's* factor, Plaintiff's interest in her tenured teaching position, was substantial. That interest was amplified by the fact that there were "questionable circumstances" surrounding Plaintiff's resignation, particularly in light of the

Counseling Letter. The second factor, the Government's interest, was weak because Plaintiff was a tenured employee. Therefore, whether there was sufficient due process hinges on how large the risk is that false charges against the Plaintiff would go unrefuted.

Here, there was sufficient due process because there was a low risk that false charges against the Plaintiff would go unrefuted with the availability of an Article 78 hearing. Plaintiff, a tenured teacher, could have commenced an Article 78 proceeding after the Board members approved her resignation prior to the 45 days allowed under the OWBPA. "[W]hen an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance." *Giglio*, 732 F.2d 1135. The Court finds that the availability of an Article 78 proceeding was sufficient because the Government's rights would be unduly impaired if they were required to conduct an investigation prior to accepting every resignation.

Additionally, the Article 78 hearing provides Plaintiff with the necessary mechanism to clear her name with a low risk of an erroneous deprivation. Again, Plaintiff's main grievance is not that she was wrongfully terminated, but that her resignation process was improper. This is not a claim that a tenured employee lost her property interest without notice and a meaningful opportunity to challenge its basis. Thus, although Defendant made stigmatizing statements, the stigma-plus claim fails because an Article 78 proceeding provided Plaintiff with sufficient due process and Plaintiff chose not to avail herself to that mechanism.

### C. Equal Protection

#### i. Equal Protection

Plaintiff also plausibly pleaded an equal protection claim. Equal protection claims under §1983 are analyzed under same standards as Title VII discrimination claims. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Since Plaintiff sufficiently pleaded a race discrimination claim

under Title VII, Plaintiff has also asserted an adequate equal protection claim. Plaintiff plausibly alleges to have suffered an adverse employment action because Defendant's conduct—placing Plaintiff on reassignment, issuing a post-resignation Counseling Letter, threatening criminal charges, and requiring Plaintiff to sign a settlement release agreement—taken together, amounts to the something "more" that is required under the statute. Further, there was an inference of discrimination because Plaintiff, a Caucasian, was treated differently than Ms. Olivia, an African American. Thus, Plaintiff has alleged an equal protection violation.

### ii. Qualified Immunity

Since the Court found that Plaintiff's §1983 claims, based on stigma-plus and due process, was not plausibly pleaded, there is no need to evaluate immunity for those claims. However, regarding Plaintiff's §1983 claim based on equal protection, which this Court did find to be plausibly pleaded, the individual Board members and Principal Simone are entitled to qualified immunity.

In determining whether defendants are entitled to qualified immunity, courts consider "(1) whether plaintiff has shown facts making out violations of a constitutional right; (2) if so, whether the right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable for the [defendant] to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citation omitted). "Following the Supreme Court's decision in *Pearson v. Callahan*, however, [courts] may exercise [their] discretion in deciding the order in which to conduct the qualified immunity analysis. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). When considering a qualified immunity defense on a motion to dismiss under Rule 12(b)(6), "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity

defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Courts have held that board members do not need to conduct a hearing prior to accepting a plaintiff's resignation. *Giglio*, 732 F.2d at 1135. In *Giglio*, the Court found the Board members did not have to conduct a hearing before accepting the plaintiff's resignation because, "[n]either the New York Education Law nor the Constitution which looks to that Law…insists that the Board first must conduct a hearing." *Id.*

Here, based on Plaintiff's allegations, Principal Simone and the Board members would be entitled to qualified immunity because Plaintiff does not allege that they had personal involvement in conduct that can be construed as a constitutional violation. Principal Simone is only alleged to have reassigned Plaintiff, and that does not amount to a violation of a clearly established constitutional right. Further, the Board members are only alleged to have voted to approve a resignation letter that was submitted to them for consideration. As stated in *Giglio*, acceptance of a resignation is not a violation of a constitutional right because neither New York Education Law nor the Constitution mandates a hearing before an acceptance of a resignation.

Superintendent Chase, however, is not entitled to qualified immunity based on Plaintiff's allegations. As discussed, Plaintiff plausibly alleged a violation of her constitutional rights under the Fourteenth Amendment, which prohibits unequal treatment of employees based on race. It was not objectively reasonable for Defendant to believe that removing Plaintiff from her duties, reassigning her to the Fishbowl, threatening her with criminal and administrative charges, and forcing her to sign a settlement agreement without subjecting Ms. Olivia to the same—was lawful.

Therefore, Superintendent Chase will not be necessarily entitled to qualified immunity, and Plaintiff's claims against her survive this motion.

## V. Breach of Contract Claim

### A. Plausible Contract

Plaintiff alleges that she and Defendant formed a valid contract, which Defendant breached. A breach of contract claim under New York Law requires showing: "(1) the existence of an agreement, (2) adequate performance of the contract by the [claimant], (3) breach of contract by the [accused] and (4) damages." *Eternity Global Master Fund Ltd. V. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). "To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and the party to be bound assented to the contract." *Id.*

Here, Plaintiff plausibly alleges all four elements of a breach of contract claim. Plaintiff plausibly alleges the existence of an agreement between both parties and adequate performance. On May 30th, 2017, Defendant offered her the retirement package in exchange for her resignation letter. On June 2, 2017, Plaintiff accepted Defendant's offer with no additional terms, handed Defendant her resignation letter, and Defendant accepted that resignation letter. Plaintiff alleges that Defendant breached that contract by requiring Plaintiff to sign a settlement agreement after the contract was already formed in order to receive the settlement package, and approving her resignation letter without her retirement package. Even if the Court were to find the settlement agreement part of the contract, Plaintiff still alleges that Defendant breached such a contract. Plaintiff told Defendant she was going to use the forty-five days granted in the settlement agreement to consider the terms, but Defendants approved Plaintiff's resignation letter before the forty-five days had expired. Finally, Plaintiff alleges damages from Defendant's breach which included the cost of medical, dental, and vision benefits from June 2017.

**B.     Statute of Limitations**

Plaintiff's breach of contract claim is not barred by the statute of limitations. Any action against a board of education or school district, must be brought within one year after the cause of action arises, even if the statute of limitations is longer. *Education Law* § 3813(2-b).

Courts have held that if the plaintiff's contract requires continual performance, a new cause of action arises with each breach. *CSEA Empl. Benefit Fund v. Warwick Val. Cent. Sch. Dist.*, 36 A.D.3d 582, 583 (2d Dept. 2007). In *Warwick Valley*, the Appellate Court held "the contract required the defendant to make monthly payment to the plaintiff; thus, a new breach occurred, for the statute of limitations purposes, each time the defendant failed to make required payment." *Id.* Here, as in *Warwick*, Defendant was required to make monthly payments to Plaintiff for health benefits, such that a new breach occurred each time Defendant failed to make such payments.

Therefore, Plaintiff's breach of contract claim is not barred by the statute of limitations.

**C.     Statute of Frauds**

**i.          Statute of Frauds**

Defendants argue that Plaintiff's contract claim should be dismissed due to the application of the statute of frauds. "The statute of frauds, as incorporated in section 5-701(a)(1) of the General Obligations Law, provides that an agreement is void if it is not in writing and 'subscribed by the party to be charged therewith' when the agreement '[b]y its terms is not to be performed within one year from the making thereof.'" *Sheehy v. Clifford Chance Rogers & Wells LLP*, 3 N.Y. 3d 554, 559-60 (2004). Courts have held an oral contract is not within the statute of frauds if they lack a fixed duration "because they could theoretically be terminated at any time with any party within one year of their making." *Kroshnyi v. U.S. Pack Courier Services, Inc.,* 771 F.3d 93, 110 (2d Cir. 2014); *Burke v. Bevona*, 866 F.2d 532, 534-38 (2d Cir. 1989). Here, the oral contract was within

the statute of frauds because it required the defendant to pay health insurance premiums for a fixed duration of ten years and was not terminable at will. Thus, the issue is whether Defendant is equitably estopped from raising the statute of frauds defense.

### ii. Equitable Estoppel

Plaintiff asserts Defendants should be equitably estopped from asserting the statute of frauds defense because she offered her written resignation based on Defendant's promise that she would receive the retirement package. Defendant argues that Plaintiff does not plausibly plead the detrimental reliance element of equitable estoppel because it was unreasonable for Plaintiff to believe she would receive the retirement package without signing the settlement agreement. The Court agrees with Plaintiff because, according to the allegations, the settlement agreement and its terms were never part of the oral contract that Plaintiff accepted or Plaintiff's letter. It thus finds Defendants are estopped from asserting the Statute of Frauds as a defense at this juncture.

A defendant may be precluded from asserting the defense of statute of frauds against a plaintiff if the plaintiff detrimentally altered his position in reliance on the former's misrepresentation or failure to disclose some material facts. *U.S. for Use and Benefits of Robert DeFilippis Crane Service, Inc. v. William L. Crow Const. Co.*, 826 F. Supp. 647, 656 (E.D.N.Y. 1993). There are three elements required in order to raise estoppel: "(1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." *Id.* The detrimental reliance must be reasonable. *Id.* However, "[a]n oral promise cannot be relied upon to estop a plea of Statute of Frauds unless the circumstances are' such as to render it unconscionable to deny' the oral promise upon which

the promisee has relied." *Nasso v. Bio Reference Lab., Inc.*, 892 F.Supp.2d 439, 450 (E.D.N.Y. 2012) (quoting *Ginsberg v. Fairfield–Noble Corp.,* 440 N.Y.S.2d 222, 224 (1981)).

Here, Plaintiff plausibly alleged that she reasonably relied on Superintendent Chase's verbal offer that if she resigned she would receive a retirement package. Plaintiff also alleged that she detrimentally relied on that promise and submitted her resignation letter, which included the terms of her retirement package, as she understood them from the oral offer. After this, Superintendent Chase allegedly changed the oral agreement terms *post hoc* to include a settlement agreement that had never before been mentioned; and if Plaintiff did not sign it, the retirement package would be rescinded. Plaintiff then alleges to have requested the forty-five days granted in the settlement agreement to consider the new terms, but before the time had passed, Defendant submitted Plaintiff's pre-settlement offer resignation letter to the Board members and rescinded the incentive package. It was reasonable that Plaintiff would tender her resignation based on Defendant's promise that she would receive the retirement package outlined in her resignation. And it was reasonable that she would rely on the forty-five days granted in the settlement agreement to consider the new terms. Thus, Plaintiff has plausibly alleged that her breach of contract claim can withstand a statute of frauds defense through the doctrine of equitable estoppel.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Defendants' Motion to Dismiss is GRANTED as to Plaintiff's claims against all Defendants for: age discrimination under the ADEA, race discrimination under Title VII, OWBPA and ADEA retaliation claims, and due process and stigma plus violations under §1983. Defendants' Motion to Dismiss Plaintiff's claims for Fourteenth Amendment Equal Protection against Principal Simone and Defendant Board members is also GRANTED.

Defendants' Motion to Dismiss Plaintiff's claims for race discrimination under Title VII and the Fourteenth Amendment against Defendant Superintendent Chase is DENIED, and similarly, Defendants' Motion to Dismiss Plaintiff's breach of contract under New York State law is DENIED.

Defendants are directed to file an ANSWER by August 30, 2019, and the parties are directed to submit a proposed case management plan by September 13, 2019. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 30.

Dated: July 30, 2019                                                  SO ORDERED:

    White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge